**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**JESSICA FRYREAR**                                                                           **PLAINTIFF**

**v.**                                                                **CAUSE NO. 4:22-CV-112-MPM-DAS**

**WASHINGTON COUNTY, MISSISSIPPI
JARRELL EVANS and CEDRICK ADAMS,
In Their Individual Capacities for State Law
Violations Only**                                                                            **DEFENDANTS**

<u>**WASHINGTON COUNTY, MISSISSIPPI'S MEMORANDUM OF AUTHORITIES
IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**</u>

      **COMES NOW**, Defendant Washington County, Mississippi, by and through counsel, and

moves this Court for a Motion for Judgment on the Pleadings and for this Honorable Court to

Dismiss Plaintiff's Complaint [Doc. 1] filed against it.[1]

## I.    <u>INTRODUCTION</u>

      If the confession of a criminal co-conspirator is not enough to establish probable cause,

there are *thousands* of people currently serving time in Mississippi (and hundreds of thousands

more across the nation) who would love to know this. Untold numbers of people have been

convicted, much less charged, on nothing else.

      Plaintiff, Jessica Fryrear's, Complaint against Washington County fails. It fails because

there was probable cause to arrest and prosecute Jessica Fryrear solely on the word of her alleged

---

[1] Movant, pursuant to Rule 201(b)(2) of the *Federal Rules of Evidence*, respectfully requests this Court to take judicial notice of the filed state court criminal documents attached to Washington County's Answer [Doc. 16], including the Probable Cause Affidavit [Doc 16-2] repeatedly referenced in and central to the Complaint but not attached to it, which is both subject to judicial notice and part of the public record and April Miller's Amended Guilty Plea [Doc. 16-1] which is both subject to judicial notice and part of the public record. "[A] district court may take into account documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned. *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (per curiam) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

co-conspirator, April Miller.  It also fails because Fryrear has not pleaded the necessary factual allegations to maintain a claim against the County.  It further fails because Fryrear cannot attempt to circumvent the fact that the County cannot be held vicariously liable for the actions of its employees by pleading that the Sheriff delegated final decision-making authority over this one (1) investigation to Defendants Evans and Adams.  Because of all this, this Court should dismiss this Complaint against Washington County.

## II.     FACTUAL ALLEGATIONS IN THE COMPLAINT AND RECORD

On July 19, 2017, Frederick Formigioni was murdered in his home in Washington County, Mississippi.[2]  The night of the murder, all of Washington County's investigators and several of its Deputy Sheriffs, totaling ten (10) Washington County law enforcement officers, responded to his murder.[3]  Sheriff Gaston was not there.[4]

Defendant Adams was the lead investigator on this case.[5]  According to Fryrear, however, Defendant Evans was the de facto lead investigator.[6]  Also according to the Complaint, "[t]he Sheriff had delegated full polity (sic)- making decisions over the investigation to Defendant Evans or, alternatively, to both Defendants Evans and Adams, jointly."[7]  The Complaint also alleges that "Defendant County is being sued because of the official policy decisions and official policy acts of its Sheriff."[8]

On October 24, 2017, Lisa Latham, a prisoner in the Washington County jail told Investigator Evans that April Miller was involved in the murder of Formigioni.[9]  Latham also

---

[2] **[Doc. 1]** at ¶4.
[3] *Id.* at ¶5.
[4] *Id.*
[5] *Id.* at ¶6.
[6] *Id.*
[7] *Id.*
[8] *Id.* at ¶2.
[9] *Id.* at ¶7.

stated that the other people involved were Donnie Williams and Christy Moore, Formigioni's girlfriend and her brother.[10]

Based on Latham's statement, Investigator Evans spoke to April Miller on October 27, 2017.[11] Miller testified later at trial that at the time she gave the testimony, she was coming off drugs and was not in her "right state of mind."[12] The Complaint does not allege that she said anything like that at the time of her statement.[13]

Miller confessed that she, the Plaintiff, and two (2) other people, namely Roderick Payne and Eugene Sanders, were involved in the murder.[14] The Complaint alleges that after Miller confessed, the Investigators returned to Latham to see if she would also identify Fryrear, Payne, and Sanders, but she refused.[15]

Based on Miller's confession, Defendant Adams executed a criminal affidavit against Fryrear on October 30, 2017 and obtained an Indictment against her on June 18, 2019.[16] Fryrear was arrested on October 30, 2017 and remained in custody until her bond was reduced on August 9, 2020.[17]

Fryrear alleges that Defendants Evans and Adams knew there was no probable cause for her arrest because (a) Defendant Evans had questioned her before about stealing, therefore the officers knew she was not honest; (b) the officers knew she was a drug addict; (c) Miller had a sexual relationship with Defendant Evans, and he could not have viewed her as an impartial

---

[10] *Id.* at ¶7, ¶4.
[11] *Id.* at ¶7.
[12] *Id.* at ¶7.
[13] *Id., generally.*
[14] *Id.* at ¶8; *see also* [Doc. 16-1, Ex. A Miller's Amended Guilty Plea, and Doc. 16-2, Ex. B. Probable Cause Aff].
[15] **[Doc. 1]** at ¶8.
[16] *Id.* at ¶9; *see also* [Doc. 16-2, Ex. B. Probable Cause Aff].
[17] **[Doc. 1]** at ¶9.

witness; (d) Miller's confession about the murder stated that she only heard one shot, and law enforcement knew there was two; (e) law enforcement should have known that Miller and Fryrear would not have been riding together because they were "at odds", and Miller had blocked Fryrear on Facebook; (f) the other three (3) people that Miller claimed were involved in the murder had alibis; and (g) the investigation failed to find evidence that Fryrear was on the scene or to find motive as to why she would have wanted to kill Formigioni.[18]

According to the Complaint, Defendants Evans and Adams did not present to the judge that issued the arrest warrant or the grand jury that Miller was a drug addict, was having sex with Defendant Evans, and was a known thief.[19]  According to the Complaint, with this information, there would "probably" have been no Indictment.[20]  At her trial in July 2021, Fryrear was acquitted.[21]  Miller eventually pled guilty to this murder.[22]  In her guilty plea, Miller still maintained that she "was in a car with others who participated in the death of Mr. Freddie Formigioni".[23]

## III.  STANDARD OF REVIEW

This Court should dismiss this case under *FRCP* 12(c).  "A Rule 12(c) motion is subject to the same standard as a motion to dismiss under *FRCP* 12(b)(6)."[24]  "The court may also consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claim."[25]

---

[18] **[Doc. 1]** at ¶10.
[19] *Id.* at ¶11.
[20] *Id.* at ¶12.
[21] *Id.* at ¶13.
[22] [Doc. 16-1, Ex. A Miller Amended Guilty Plea].
[23] *Id.* p. 1.
[24] *Walker v. Beaumont Indep. Sch. Dist.,* 938 F.3d 724, 734 (5th Cir. 2019).
[25] *Griffin v. HSBC Mortg. Servs.,* 2016 U.S. Dist. LEXIS 35255, at *27 (N.D. Miss. Mar. 18, 2016) (quoting *Gallentine v. Hous. Auth. of City of Port Arthur, Tex.,* 919 F. Supp. 2d 787, 794 (E.D. Tex. 2013)(collecting cases)).

"To withstand a motion to dismiss, a complaint must allege more than labels and conclusions, as a formulaic recitation of the elements of a cause of action will not do. It must state a plausible claim for relief, rather than facts merely consistent with liability."[26] The Court must set aside "any unsupported legal conclusions," the truth of which the Court cannot assume.[27] The Court must also ask "whether the remaining allegations are sufficient to nudge the plaintiff's claim across the plausibility threshold."[28]

## IV.   ARGUMENT

Fryrear's Complaint against Washington County should be dismissed.[29] There was probable cause to arrest Fryrear based solely on the word of her alleged co-conspirator. If this Court decides this issue in favor of Washington County, it need not go further. But Fryrear's Complaint is also deficient because it fails to plead the necessary elements to maintain a §1983 claim against Washington County.

Finally, Fryrear cannot use creative pleading to circumvent the law. Counties cannot be vicariously liable for the actions of their employees. Thus, Fryrear's allegations that the Sheriff delegated final decision-making authority over this one (1) investigation to Defendants Evans and Adams fails as a matter of law.

---

[26] *Heinze v. Tesco Corp.,* 971 F.3d 475, 479 (5th Cir. 2020) (cleaned up).

[27] *Id*.

[28] *Id*. (quoting *Doe v. Robertson*, 751 F.3d 383, 390 (5th Cir. 2014)).

[29] Once the claims against Washington County are dismissed, all that remain are state law claims against the two (2) individual defendants, which may be better addressed in a state forum. Additionally, to show malicious prosecution in Mississippi, Fryrear must prove the following elements: (1) the institution or continuation of original judicial proceedings, either criminal or civil; (2) by, or at the insistence of the defendants; (3) the termination of such proceeding in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceedings; and (6) the suffering of damages as a result of the action or prosecution complained of. *Bearden v. BellSouth Telecomms., Inc.*, 29 So. 3d 761, 764 (Miss. 2010) (citation omitted). Because Fryrear cannot show want of probable cause, her malicious prosecution claim cannot succeed. *Loftin v. City of Prentiss*, 33 F.4th 774, 783 (5th Cir. 2022). If this Court determines that there was probable cause, Fryrear's malicious prosecution claim must also fail.

**A. Plaintiff's §1983 Fourth Amendment Claim Against Washington County Fails.**

Fryrear's Fourth Amendment claim fails. Fryrear alleges that the County is "liable for violation of the Fourth Amendment", a violation which was caused by the official policies of the Sheriff in being willfully indifferent to citizens being arrested without probable cause and for making the policy decision to give no training whatsoever on the necessity of having reliable information before making a criminal charge."[30]

But, to prevail on her Fourth Amendment claim against the County, Fryrear must allege both (1) that a constitutional violation occurred and (2) that a governmental policy or custom was the moving force behind the violation.[31] Fryrear has not plausibly alleged either.

**1. There Was No Constitutional Violation.**

Here, Fryrear has not plausibly alleged a constitutional violation. According to her, there was not probable cause to arrest her for the capital murder of Frederick Formigioni based solely on the statements of her alleged co-conspirator. Fryrear is wrong.

Here, Fryrear's arrest warrant was issued by a Justice Court Judge, and Fryrear was indicted by a grand jury.[32] "It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party."[33] "Thus, a properly secured arrest warrant . . . will shield a defendant who has committed or initiated a

---

[30] **[Doc. 1]** at ¶19, Count, II.
[31] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).
[32] *See* [Doc. 16-2, Ex. B. Probable Cause Aff]; *see also* [Doc. 1, Ex. A. Indictment].
[33] *Wilson v. Stroman*, 33 F.4th 202, 208(5th Cir. 2022) (quoting *McLin v. Ard,* 866 F.3d 682, 689 (5th Cir. 2017)); *accord Mayfield v. Currie*, 976 F.3d 482, 487 (5th Cir. 2020).

false arrest."[34] Under this doctrine, even an officer who acted with malice is shielded from liability for false arrest.[35]

But the independent intermediary doctrine is not absolute.[36] The defendant may nevertheless be liable if the plaintiff shows the defendant's actions tainted the independent intermediary's deliberations.[37] There are two (2) ways to do this, neither of which applies here.

### a. No *Malley* Violation.

Fryrear has not alleged a *Malley* violation, so her Fourth Amendment claim fails. Under the first type of claim, premised on the Supreme Court's holding in *Malley v. Briggs*, "an officer can be held liable for a search authorized by a warrant when the affidavit presented to the magistrate was 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable.'"[38] If a "reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant," the officer's "shield of immunity [will] be lost."[39] The "*Malley* wrong is not the presentment of false evidence, but the obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant."[40]

There was clearly no *Malley* violation here as the Probable Cause Affidavit on which Fryrear was arrested set out ample probable cause for the crime of capital murder.[41] In Mississippi,

---

[34] *Wilson*, 33 F.4th at 208 (quoting *Buehler v. City of Austin*, 824 F.3d 548, 554 (5th Cir. 2016)).
[35] *Buehler*, 824 F.3d at 554.
[36] *Anokwuru v. City of Houston*, 990 F.3d 956, 963-64 (5th Cir. 2021).
[37] *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010); *accord Wilson*, 33 F.4th at 208.
[38] *Mayfield v. Currie*, 976 F.3d 482, 487 (5th Cir. 2020) (quoting *Malley Briggs*, 475 U.S. 355, 344-45 (1986)).
[39] *Malley*, 475 U.S. at 344-45.
[40] *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017).
[41] *See* [Doc. 16-2, Ex. B. Probable Cause Aff].

capital murder is defined as: "The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:

> (e) When done *with or without any design to effect death*, by *any person engaged in the commission of the crime of* rape, *burglary*, kidnapping, arson, *robbery*, sexual battery, unnatural intercourse with any child under the age of twelve (12), or nonconsensual unnatural intercourse with mankind, *or in any attempt to commit such felonies*"[42]

Additionally, "[a]n indictment for murder or capital murder shall serve as notice to the defendant that the indictment may include any and all lesser included offenses thereof, including, but not limited to, manslaughter."[43]

Probable cause is a "practical, nontechnical conception" that deals with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."[44] It turns "on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules."[45] Because of this, Courts must look to the "totality of the circumstances" and decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer" demonstrate "a probability or substantial chance of criminal activity."[46]

Critically, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."[47] Thus, probable cause "is not a high bar."[48] But "the belief of guilt must be particularized with respect to the person to be searched or seized."[49] Probable cause exists when the totality of the facts and circumstances within a police officer's

---

[42] *Miss. Code Ann.* § 97-3-19(2)(e)(emphasis added).
[43] *Miss. Code Ann.* § 97-3-19 (3).
[44] *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (internal citations and quotations omitted).
[45] *Id.* at 371 (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).
[46] *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quotations and citations omitted).
[47] *Gates*, 462 U.S. at 243 n.13 (1983).
[48] *Kaley v. United States*, 571 U.S. 320, 338 (2014).
[49] *Pringle*, 540 U.S. at 371.

knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.[50]  Importantly "[f]acts discovered *after* the issuance of the arrest warrants and subsequent arrests go to the guilt or innocence of plaintiff and have no effect on whether probable cause existed at the time the arrest warrants were issued."[51]

Here, Fryrear did not attach her Probable Cause Affidavit to her Complaint, and it is easy to see why, as it clearly outlines the necessary probable cause to arrest her for the crime of capital murder.[52]  It states that Sunflower County Chief Deputy, Marvin Flowers, reached out to Investigator Jarrell Evans about April Miller.[53]  Miller wanted to speak with Washington County Sheriff's Department Investigators about the murder of Frederick Formigioni.[54]  Inv. Jarrell Evans, Inv. Amber Holmes, and Inv. Cedric Adams all went to speak with Miller at the Sunflower County Sheriff's Department on October 27, 2017.[55]  Miller was read a *Miranda* warning and waived her right to an attorney.[56]

Miller confessed that early in the morning on July 19, 2017, she and "G" whose real name is Eugene Sanders, "Bass" whose real name is Roderick Payne, and Jessica Fryrear were all riding together in Sanders's father's grey Chevy Impala.[57]  Miller said that Sanders was driving, and they all stopped by her cousin, Floyd Whitaker's, home, where she tried to get Mr. Whitaker to go with them to rob the decedent, Frederick Formigioni.[58]  Mr. Whitaker refused.[59]

---

[50] *Mesa v. Prejean*, 543 F.3d 264 (5th Cir. 2008).
[51] *Johnson v. Bunch*, 2011 U.S. Dist. LEXIS 25414, *13 (M.D. La. Jan. 2011)(holding that probable cause existed to issue an arrest warrant based on the statement of a co-conspirator)(emphasis in original).
[52] *Compare* [Doc. 1] *with* [Doc. 16-2, Ex. B Probable Cause Aff.].
[53] [Doc. 16-2, Ex. B Probable Cause Aff.] p. 2.
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Id.*

Miller confessed that "she along with Roderick Payne, Eugene Sanders, and Jessica Fryrear planned to go to Mr. Formigoni's (sic) residence on Metcalfe Road and rob him."[60] When they arrived, Sanders parked the car and went to the carport door with a silver gun.[61] Miller stated that Payne did not have a gun.[62] "Ms. Miller stated that she heard a gunshot."[63] She also stated that both men stayed at the house for about ten minutes, and then they came back to the car and left.[64] She stated that she did not know if they actually stole anything from the house because she did not see anything in their hands when they returned to the car.[65]

From Miller's confession, all four (4) persons, Jessica Fryrear included, were involved in the attempted burglary and/or robbery of Mr. Formigioni. Therefore, under Mississippi's capital murder statute, all four (4) would be liable for his death. Fryrear's Complaint does not plausibly allege a *Malley* violation.

### b. No *Franks* Violation.

Fryrear also does not plausibly allege a *Franks* violation.[66] Under the second type of Fourth Amendment claim, known as *Franks* liability, "a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes ⸹a false statement knowingly and intentionally, or with reckless disregard for the truth' and (2) ⸹the allegedly false statement is necessary to the finding of probable cause.'"[67] Here, Fryrear does not allege the typical *Franks* violation. Instead, she alleges that exculpatory facts were omitted from the arrest warrant. "To

---

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.* p. 2-3.

[66] The *Franks* case arose in the context of a search warrant, but its rationale extends to arrest warrants. *See Melton v. Phillips*, 875 F.3d 256, 262 (5th Cir. 2017) (en banc).

[67] *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

determine whether facts omitted from a warrant affidavit are material to the determination of probable cause, courts ordinarily insert the omitted facts into the affidavit and ask whether the reconstructed affidavit would still support a finding of probable cause."[68]

According to the Complaint, there are seven (7) reasons why there was no probable cause for Fryrear's arrest -- but looking at each listed reason individually -- discounts all of them. First, Fryrear alleges that (A) "Defendant Evans had questioned Miller on many different occasions about different instances in which Miller was stealing."[69] Because of this, the Complaint alleges, "Defendant Evans, and probably Defendant Adams, who was actively participating in the investigation, knew that Miller was not honest."[70] The crime that Miller had just confessed to was capital murder, *based on her intent to rob* Mr. Formigioni.[71] If Miller had been questioned about stealing before, this would/could make her confession more likely to be true than less likely to be true. Omitting this from her arrest warrant is not an exculpatory fact.

Next, Fryrear alleges that Evans and Adams knew Miller was a drug addict.[72] It is well known that drug addicts steal to support their habit. Again, Miller confessed that she was involved in the plan to rob Mr. Formigioni.[73] If the Investigators added the fact that Miller was a known drug addict to her arrest warrant, this would not be an exculpatory fact. It would make her confession more likely, not less.

Fryrear next alleges that Miller testified at her trial that the night of the murder she was high on drugs and that at the time she spoke to law enforcement she was high on drugs.[74] But

---

[68] *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006) (citing *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980)).
[69] [Doc. 1] at ¶10, A.
[70] *Id.*
[71] [Doc. 16-2, Ex. B Probable Cause Aff.] p. 2.
[72] [Doc. 1] at ¶10, B.
[73] [Doc. 16-2, Ex. B Probable Cause Aff.] p. 2.
[74] [Doc. 1] at ¶10, B.

11

"[f]acts discovered *after* the issuance of the arrest warrants and subsequent arrests go to the guilt or innocence of plaintiff and have no effect on whether probable cause existed at the time the arrest warrants were issued."[75]   There are no allegations in the Complaint that either Investigator knew that Miller was allegedly "not in her –right state of mind"[76] when she confessed, only that she testified to this years later at trial.  This has no bearing whatsoever on the arrest warrant and indictment.

Next, Fryrear alleges that Miller had a sexual relationship with Defendant Evans.[77]  She presents the affidavit of Connie Raymond in support of the same.[78]  Nowhere in the affidavit does it state that Investigator Adams, who presented the Probable Cause Affidavit and was the lead investigator on the case, was ever aware of any such relationship.[79]  Moreover, as noted in the Probable Cause affidavit,  April Miller originally came forward to Sunflower County Chief Deputy Marvin Flowers, not Investigator Evans.[80]   It was Chief Deputy Flowers who contacted Investigator Evans.[81]   And Investigator Evans, Investigator Adams, and Investigator Amber Holmes were all present for the interview of April Miller.[82]  There is no suggestion that this alleged relationship influenced Chief Deputy Marvin Flowers, Investigator Adams, and Investigator Holmes.  This fact is not material.

Next, Fryrear alleges that there was no probable cause to arrest her because "Defendant Evans and Adams knew the statement about a single shot could not have been true since physical

---

[75] *Johnson v. Bunch*, 2011 U.S. Dist. LEXIS 25414, *13 (M.D. La. Jan. 2011)(holding that probable cause existed to issue an arrest warrant based on the statement of a co-conspirator) (emphasis in the original).
[76] [Doc. 1] at ¶10, B.
[77] [Doc. 1] at ¶10, C.
[78] [Doc. 1, Ex. B Aff of Connie Raymond].
[79] *Id.*
[80] [Doc. 16-2, Ex. B Probable Cause Aff.] p. 2.
[81] *Id.*
[82] *Id.*

evidence had demonstrated that there were two (2) shots fired."[83]  But the Probable Cause Affidavit makes clear that there were two (2) gunshots fired.[84]  It states that when deputies arrived at the home, they found Mr. Formigioni who appeared to have only been shot once.[85]  But that they interviewed Christy Moore, Formigioni's girlfriend who was present at the time of the murder, and she told them that "she was still in the bedroom and could hear Mr. Formigoni (sic) open the door and the next thing she heard was a gunshot.  Ms. Moore stated she ran into the bathroom that was inside of the bedroom.  Ms. Moore stated she heard **another gunshot** and that's when she grabbed her cell phone from the bed and went back into the bathroom and called 911."[86]  The fact that Miller only testified that she heard one (1) gunshot, when there were two (2) recorded at the scene was already put before the Justice Court Judge who issued the arrest warrant.

The remaining three (3) allegations (E) that Plaintiff and Miller were at odds and that they had once lived together but were not on speaking terms, (F) that the other two (2) persons Miller claimed were involved in the murder all had alibis, and (G) that the officers comprised a 110-page investigation about the murder but failed to find any evidence corroborating Miller's statements are all "[f]acts discovered *after* the issuance of the arrest warrants" and "go to the guilt or innocence of plaintiff", therefore they "have no effect on whether probable cause existed at the time the arrest warrants were issued."[87]  Fryrear's *Frank's* violation fails as well.

### 2.  Fryrear Has Failed to Allege Any Official Policy or Custom.

Even if this Court were to find that Fryrear plausibly pled a Fourth Amendment violation occurred, which it should not, Fryrear has not alleged *any* factual allegations which would show

---

[83]  [Doc. 1] at ¶10, D.
[84]  [Doc. 16-2, Ex. B Probable Cause Aff.] p. 2.
[85]  *Id.*
[86]  *Id.* (emphasis added).
[87]  *Johnson*, 2011 U.S. Dist. LEXIS 25414, *13.

that an official policy or custom existed. Fryrear must identify the following: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.[88] Here, Fryrear fails to allege *any* specific facts showing that the policy decision of not giving adequate training caused her alleged injury.

First, Fryrear makes no *factual* allegations which would show that an official policy exists.[89] An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is ┄so common and well-settled as to constitute a custom that fairly represents municipal policy."[90] "[A] complaint's ┄description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts."[91]

To prevail on her Fourth Amendment claim based specifically on a failure to train, Fryrear must allege the following: (1) the training procedures of the municipality's policymaker were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused the plaintiff's injury.[92] "In

---

[88] *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (citing *Pineda v. City of Houston*, 291 U.S. F.3d 325, 328 (5th Cir. 2002); *see also Duvall v. Dallas Cnty, Tex.*, 631 F.3d 203, 209 (5th Cir. 2011) (citing *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 694 (1978); *see also Pierre v. Oginni*, 2018 U.S. Dist. LEXIS 150437, at *3 (S.D. Tex. Sept. 5, 2018) (in which the Court granted the §1983 defendant's motion to dismiss based on the plaintiff's failure to articulate facts supporting each element of his claim).

[89] *See* **[Doc. 1]**, *generally*.

[90] *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009)(quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

[91] *Pena v. City of Rio Grande City,* 879 F.3d 613, 622 (5th Cir. 2018)(quoting *Spiller v. City of Texas City, Police Dep't,* 130 F.3d 162, 167 (5th Cir. 1997)).

[92] *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996); *Trammell v. Fruge*, 868 F.3d 332, 344-45(5th Cir. 2017).

order for liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective.ö[93]

There can be no doubt that Fryrear does not plead factual allegations which would demonstrate either written policy statements or a widespread practice or pattern (as the only incident she discusses is her own).[94]  Therefore, she must be proceeding under a single incident theory; but this too fails.  To prevail on a õ single-incidentö liability claim, requires showing that failure to train will õ so obviouslyö cause government officials to õ make wrong decisions that failing to train them amounts to a decision by the [county] itself to violate the Constitution.öö[95]  Fryrear has not pled facts specific enough to show that the purported failure to train õ so obviouslyö caused the officers to make allegedly wrong decisions.[96]

Nor has she pled facts which would show that the Sheriff was deliberately indifferent, or which would link his deliberate indifference to her alleged injury.[97]  Deliberate indifference is õ an extremely high standardö that requires a õ stringentö level of culpability.[98]  In all but extraordinary cases, there must be evidence of õ a pattern of similar incidentsö that would provide notice that supervision or training is constitutionally deficient.[99]  Here, Fryrear has pled no patterns of similar incidents that could satisfy the deliberate indifference standard.

---

[93] *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (internal quotation marks omitted) (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)).
[94] *See* **[Doc. 1]**, *generally.*
[95]  *Connick v. Thompson*, 563 U.S. 51, 71(2011)(quoting *City of Canton v. Harris*, 489 U.S. 378, 395 (1989)).
[96] *Id*.
[97] *See, e.g., Brown v. Callahan*, 623 F.3d 249, 253-54 (5th Cir. 2010).
[98] *See Connick*, 563 U.S. at 62; *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).
[99] *See Sanders-Burns v. City of Plano*, 594 F.3d 366, 382 (5th Cir. 2010); *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (õ To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation.ö (internal quotation marks omitted).

Nor has she pled facts which link the necessary causation between the lack of training and her arrest. "The '[moving force]' inquiry imposes a causation standard higher than '[but for]' causation."[100] There must be a "direct causal connection . . . between the policy and the alleged constitutional deprivation."[101] Here, Fryrear barely mentions training at all.[102] When she does, she merely makes the conclusory statement that the Sheriff "was willfully indifferent to the right of citizens by failing to train his deputies[] that they must have a reliable informant in order for the informant's statements to constitute probable cause . . .and by failing to train Defendants Adams and Evans that they must have probable cause."[103] But, "[t]o withstand a motion to dismiss, a complaint must allege more than labels and conclusions, as a formulaic recitation of the elements of a cause of action will not do."[104] This Court must set aside "any unsupported legal conclusions," the truth of which the Court cannot assume.[105] That is all that Fryrear has here, a formulaic recitation of the elements and unsupported legal conclusions.

To summarize, Fryrear's *Monell* claim fails because she has failed to plead the necessary facts to allege (1) a constitutional violation, (2) an official policy or custom, or that (3) the policy or custom was the moving force behind her alleged constitutional violation. This Court should dismiss the Section 1983 claim against Washington County.

**B. The County Cannot Be Vicariously Liable for the Actions of Its Employees.**

Washington County also cannot be liable because the Sheriff delegated Fryrear's investigation to the individual defendants. In her Complaint, Fryrear asks this Court to hold

---

[100] *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015).
[101] *Id.* (quotation omitted).
[102] *See* **[Doc. 1]**, *generally*.
[103] **[Doc. 1]** at ¶16.
[104] *Heinze v. Tesco Corp.,* 971 F.3d 475, 479 (5th Cir. 2020) (cleaned up).
[105] *Id*.

Washington County liable for the actions of Defendants Evans and Adams because "the Sheriff delegated to [them] the official authority to arrest, investigate, and prosecute Plaintiff, notwithstanding the absence of probable cause."[106]  But a municipality cannot be held liable for constitutional violations committed by its employees or agents on a theory of vicarious liability,[107] and that is all that Fryrear is trying to do here.  No theory of *respondeat superior* is available to her. [108]

  The identity of a policymaker is a question of state law.[109]  Here, as Fryrear concedes, under Mississippi law the Sheriff is the official law enforcement policymaker for Washington County.[110]  "[O]nly those municipal officials who have 'final policymaking authority' may by their actions subject the government to §1983 liability."[111]  "[T]he identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge"[112]

  Here, there are no allegations that Defendants Evans and Adams have the "final policy making authority" for the Washington County Sheriff's Department or that their decisions "represent the official policy of the local governmental unit."  The only allegations are that the "Sheriff delegated to Defendants Evans and/or Adams the official authority to arrest, investigate,

---

[106] **[Doc. 1]** at ¶19, Count, III.

[107] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691-92 (1978).

[108] *Sanders-Burns v. City of Plano*, 578 F.3d 279, 290 (5th Cir. 2009) (citations omitted).

[109] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988).

[110] *Brooks v. George Cty., Miss.,* 84 F.3d 157, 165 (5th Cir. 1996). "[I]t is well established that '[s]heriffs in Mississippi are final policymakers with respect to all law enforcement decisions made within their counties.'" *Conner v. Alltin*, 571 F. Supp. 3d 544 (N.D. Miss. 2021) (quoting *Brooks v. George Cty., Miss.,* 84 F.3d 157, 165 (5th Cir. 1996)); *see also* **[Doc. 1]** at ¶16 (The Sheriff of Washington County is the official law enforcement policymaker of Defendant County).

[111] *Praprotnik*, 485 U.S. at 123 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

[112] *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989) (emphasis in original).

and prosecute Plaintiffö.[113]  In other words, the Sheriff delegated to them the authority to do their

jobs, which, by law, he is allowed to do.[114]  This claim fails as a matter of law.

<u>**CONCLUSION**</u>

This Court should dismiss the Complaint against Washington County.

**WHEREFORE, PREMISES CONSIDERED,** Defendant Washington County,

Mississippi prays that it be dismissed with prejudice from this action.

**RESPECTFULLY SUBMITTED** this the 25th day of October, 2022.

JACKS GRIFFITH LUCIANO, P.A.

By: */s/ Bethany A. Tarpley*
    Bethany A. Tarpley, MS Bar No. 104134
    Arnold U. Luciano, MS Bar No. 99198
    Daniel J. Griffith, MS Bar No. 8366
    Attorneys for Defendant, Washington
    County, Mississippi

Of Counsel:

**JACKS GRIFFITH LUCIANO, P.A.**
150 North Sharpe Avenue
P. O. Box 1209
Cleveland, MS 38732
Telephone: 662-843-6171
Facsimile: 662-843-6176
Email: btarpley@jlpalaw.com
       aluciano@jlpalaw.com
       dgriffith@jlpalaw.com

---

[113]  **[Doc. 1]** at ¶19, Count, III.
[114]  *See Miss Code Ann.* §19-25-19.

## CERTIFICATE OF SERVICE

I, Bethany A. Tarpley, attorney of record for Defendant, Washington County, Mississippi, do hereby certify that I have this day caused a true and correct copy of the above and foregoing *Washington County, Mississippi's Memorandum of Authorities in Support of its Motion for Judgment on the Pleadings* to be delivered by the ECF Filing System which gave notice to the following:

> Jim Waide, Esq.
> Waide & Associates, P.A.
> P.O. Box 1357
> Tupelo, MS 38802
> Email: waide@waidelaw.com
> **Attorneys for Plaintiff**

> William Robert Allen, Esq.
> Katelyn A. Riley, Esq.
> Allen, Allen, Breeland & Allen, PLLC
> P.O. Box 751
> Brookhaven, MS 39602
> Email: wallen@aabalegal.com
>         kriley@aabalegal.com
> **Attorneys for Jarrell Evans, Individually**

> Willie Griffin, Esq.
> Bailey & Griffin
> P.O. Box 189
> Greenville, MS 38702
> Email: wgriffinlawyer@aol.com
> **Attorney for Defendants**

**DATED** this 25th day of October, 2022.

/s/ ***Bethany A. Tarpley***
Bethany A. Tarpley