**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**JESSICA FRYREAR**                                                                                            **PLAINTIFF**

**VS.**                                                                    **CAUSE NO.  4:22-cv-00112-MPM-DAS**

**WASHINGTON COUNTY, MISSISSIPPI,
JARRELL EVANS and CEDRICK ADAMS,
in Their Individual Capacities for State Law
Violations Only**                                                                                  **DEFENDANTS**

---

**PLAINTIFF'S MEMORANDUM BRIEF IN OPPOSITION TO DEFENDANT
WASHINGTON COUNTY, MISSISSIPPI'S MOTION FOR JUDGMENT ON THE
PLEADINGS [19]**

---

## I.   INTRODUCTION

This case is before the Court on Defendant Washington County, Mississippi's Motion for Judgment on the Pleadings [19].

## II.   STANDARD OF REVIEW

"A motion to dismiss under rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003). "[T]he court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

A complaint need only "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim is facially plausible if the pleaded factual content 'allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Stratta v. Roe*, 961 F.3d 340, 349-50 (5th Cir. 2020) , quoting *Ashcroft v. Iqbal*, 556 U.S. at 678.

The Court must "recount the facts as [the plaintiff] describes them, drawing every inference in his favor. . . ." *Doe v. Purdue Univ.*, 928 F.3d 652, 656 (7th Cir. 2019) (citation omitted).

"In deciding a motion to dismiss the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003). "[D]ocuments attached to the motion to dismiss, if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim" may be considered. *Griffin v. HSBC Mortg. Servs., Inc.*, 2016 WL 1090578, at *2 (N.D. Miss. 2016) (citing Fifth Circuit authorities).

## III. FACTS

On July 19, 2017, Mr. Frederick Formigioni was shot dead in his home in Washington County, Mississippi. The most likely suspect was Donnie Williams whom Formigioni had fired as a farmhand. Williams' sister, Christy Moore, was living with Formigioni and claiming to be his girlfriend, although she had ongoing sexual relationships with several other men. Moore was present at the time of the murder and appeared to have gunshot resident on her person. Moore told deputies that an unknown black male came to the door and shot Formigioni. Complaint, ¶ 4 [1].

Defendants/Deputies Cedrick Adams and Jarrell Evans investigated the case. The Sheriff of Washington County delegated policy decisions over the investigation of the murder to one or both of the deputies. Complaint, ¶ 6 [1].

A little over three months after the murder, on October 24, 2017, one Lisa Latham, a prisoner in the Washington County Jail, identified April Miller, Donnie Williams, and Christy Moore as

involved in the murder.  Complaint, ¶ 7 [1].  Based upon Latham's statement, Defendant Evans obtained an oral statement from Miller on or about October 27, 2017.  At the time Miller gave her oral statement, Miller was coming off drugs and was not in her "right state of mind."  Complaint, ¶ 7 [1].

At Fryrear's criminal trial, Miller testified that she knew Defendant Evans because Defendant Evans always accused her of stealing.  Excerpts of Trial Testimony in the case styled *State v. Fryrear, et al.*, Washington County Circuit Court No. 2019-0061 ("Trial Testimony From *Fryrear* Criminal Trial"), pp. 35-36, Exhibit "A."  Miller testified that she takes drugs every day.  Trial Testimony From *Fryrear* Criminal Trial, pp. 32-34, Exhibit "A."  Miller also swore at the criminal trial that she "probably was high" when she gave an oral statement to deputies.  Trial Testimony From *Fryrear* Criminal Trial, p. 67, Exhibit "A."

Defendant County attached to its answer Exhibit B, which contains both a conclusory sworn charge and an unsworn narrative purporting to be what Miller told deputies.  *See* Defendant County's Answer, Exhibit B [16].  According to this narrative, Miller told deputies that Miller, Fryrear, and two (2) males, Payne and Sanders, drove to the home of the deceased on the night of the murder.  Only the two (2) males exited the vehicle and Miller later heard a single gunshot.  According to Miller, the two (2) males reentered the vehicle empty handed and said nothing about any shooting or any robbery.  Defendant County's Answer, Exhibit B [16]; Trial Testimony From *Fryrear* Criminal Trial, pp. 16-18, Exhibit "A."

Defendants attempted to have Latham corroborate that Fryrear, Payne, and Sanders were present, but Latham refused to so.  Complaint, ¶ 8 [1].

According to Latham, after she refused to corroborate Miller's statements, she endured harassment from law enforcement. Complaint, ¶ 8 [1].

It is unlikely Miller would have been riding in a vehicle with Fryrear on the night of the murder. Miller and Fryrear were not on speaking terms at the time of the murder. Complaint, ¶ 10(e) [1].

The three (3) persons whom deputies claim Miller identified as being in the vehicle with her (Fryrear, Payne, and Sanders) all had exonerating alibis. Complaint, ¶ 10(f) [1].

At the criminal trial, all three (3) criminal defendants (Fryrear, Payne, and Sanders) were acquitted by the jury on July 23, 2021. Complaint, ¶ 13 [1].

As a basis for liability as to Defendant Washington County, the Complaint alleges that:

> Consistent with the Sheriff's custom and policy, he was willfully indifferent to the right of citizens by failing to train his deputies, that they must have a reliable informant in order for the informant's statements to constitute probable cause, and . . . was willfully indifferent to the rights of arrestees by failing to make any reasonable investigation whatsoever into this case, and by failing to train Defendants Adams and Evans that they must have probable cause.

Complaint, ¶ 16 [1].

The Complaint sues the individual Defendants Evans and Adams for malicious prosecution in violation of state law and sues Defendant County for Fourth Amendment violations based upon the Sheriff's willful indifference to citizens in failing to give any training on the necessity of having reliable information before making a criminal charge. Complaint, ¶ 18, Counts I and II [1].

Defendant County has moved to dismiss, claiming that Defendant County cannot be sued because it had probable cause and that the Complaint fails to contain sufficient specific allegations to make Defendant County liable.

-4-

## IV.  ARGUMENTS

### A.  IT IS PLAUSIBLE THAT JESSICA FRYREAR WILL BE ABLE TO ESTABLISH FACTS INDICATING A LACK OF PROBABLE CAUSE.

Defendant County argues: "There was probable cause to arrest Fryrear based solely on the word of her alleged co-conspirator." Washington County, Mississippi's Memorandum of Authorities in Support of Its Motion for Judgment on the Pleadings ("Defendant County's Brief"), p. 5 [20]. The "word" on which Defendant County relies is the word from a person who "probably was high" when she talked to the deputies, Trial Testimony From *Fryrear* Criminal Trial, p. 67, Exhibit "A," whose word was contradicted by another person, Latham, and was taken as true in the face of three (3) persons who had alibi witnesses to the contrary. Deputies would not have even been talking to Miller in the first place had it not been for the fact that Lisa Latham had given her statement saying that she, Miller, Williams, and Moore (not Fryrear) were the persons involved in the murder. Complaint, ¶ 7 [1].

It is true that the lack of probable cause is one of the elements of a state law malicious prosecution suit. *Bankston v. Pass Rd. Tire Ctr., Inc.*, 611 So. 2d 998, 1004 (Miss. 1992). However, under Mississippi law, it is only when the facts are undisputed that the court may determine probable cause. " If the facts are in dispute, however, it is a jury question, based upon proper instructions, to determine whether probable cause existed." *Moon v. Condere Corp.*, 690 So. 2d 1191, 1195 (Miss. 1997), citing *Owens v. Kroger Co.*, 430 So.2d 843, 846 (Miss.1983).

Furthermore, "where a reasonable person would investigate further before instigating a proceeding, the failure to do [indicates] an absence of probable cause. . . ." *Benjamin v. Hooper Elec. Supply Co.*, 568 So. 2d 1182, 1191 (Miss. 1990). *Lochridge v. Pioneer Health Servs. of*

*Monroe Cnty., Inc.*, 86 So. 3d 942, 948 (Miss. App. 2012), held that there were genuine issues of material fact as to whether the defendant had probable cause to initiate burglary charges, because there had to be both an "honest belief" and "reasonable grounds" to constitute probable cause under Mississippi law.

This is not a case where the probable cause is based solely on what an informant said. Instead, this is a case where the probable cause is based upon the word of an informant who was probably high on drugs and whose testimony is contradicted by another witness and who was a suspected thief.

Even if this were a case where there was only a lack of evidence of an informant's reliability, Mississippi law is that probable cause still would not exist. *Roebuck v. State*, 915 So. 2d 1132, 1139 (Miss. App. 2005), held that probable cause for issuance of a warrant is not established without evidence that the "confidential informant was truthful. . . ." *Roebuck* further held that "Judge Graham also conceded that the affidavit does not mention the reliability of the confidential informant." *Roebuck*, 915 So. 2d at 1139. *Roebuck* concluded: "Because nothing in the record before this Court suggests that [the officers] presented any basis of reliability on the informer's statement or any suggestion of the veracity of it, the motion to suppress should have been granted." *Roebuck*, 915 So. 2d at 1140.

Since Mississippi's interpretation of its own Constitution, MISS. CONST. § 23, requires evidence of reliability of an informant, Mississippi law would not support a finding of probable cause in this case. Thus, Defendant County's contention that the individual Defendants should be dismissed because of the existence of probable cause is defeated by *Roebuck*.

-6-

For purposes of Fryrear's federal claim, however, the United States Supreme Court has established less restrictive requirements for determination of probable cause than required by the Mississippi Supreme Court in *Roebuck*.

*Illinois v. Gates*, 462 U.S. 213, 230-31 (1983), adopted a "totality of the circumstances" test for determining probable cause. *Gates* held that probable cause is "a fluid concept—turning on the assessment of probabilities in particular factual contexts. . . ." *Gates*, 462 U.S. at 232. *Gates* quoted previous authority, holding that the value of "[i]nformants' tips . . . vary greatly in their value and reliability." *Gates*, 462 U.S. at 232.

*Gates* overruled *Aguilar v. State of Tex.*, 378 U.S. 108 (1964), and held that to establish probable cause, an "affidavit must [only] provide the magistrate with a substantial basis for determining the existence of probable cause. . . ." *Gates*, 462 U.S. at 239. *Gates* specified that the Supreme Court decisions have "consistently recognized the value of corroboration of details of an informant's tip by independent police work, . . . ." and reaffirmed that an affiant "may rely upon information received through an informant, . . .so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." *Gates*, 462 U.S. at 241-42, quoting *Jones v. United States*, 362 U.S. 362 U.S. 257, 269 (1960).

Because of substantial corroboration of the informant's tip in *Gates*, the Supreme Court concluded that the judge "had a substantial basis for concluding that probable cause [to search Gates' home] existed." *Gates*, 462 U.S. at 214.

This case does not satisfy even the more liberal *Gates'* (federal) test for a finding of probable cause under the Fourth Amendment. The evidence is that Miller was unreliable since she was high on drugs, was a drug addict, and was a suspected thief. Rather than providing corroboration, another

witness had identified Miller, Donnie Williams, and Christy Moore as the persons involved in the murder. There was, thus, no substantial basis for determining the existence of probable cause as a matter of federal constitutional law.

**B.    THE JUSTICE COURT JUDGE'S ISSUING A WARRANT DOES NOT NEGATE A PLAUSIBLE CLAIM THAT THE JUSTICE COURT JUDGE DID NOT ACT AS AN IMPARTIAL INTERMEDIARY.**

Defendant County argues that "[i]t is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." Defendant County's Brief, p. 6, citing *Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022) (quoting *McLin v. Ard,* 866 F.3d 682, 689 (5th Cir. 2017)); *accord Mayfield v. Currie*, 976 F.3d 482, 487 (5th Cir. 2020) [20].

However, *United States v. Burzynski Cancer Rsch. Inst.*, 819 F.2d 1301, 1309 (5th Cir. 1987), construed *Malley v. Briggs*, 475 U.S. 335, n. 7 (1986), as follows:

> The government contends, however, that the warrant was issued by an independent judicial officer, the United States Magistrate, and that under this court's decision in *Jureczki v. City of Seabrook, Texas*,[1] "[a] judge's determination of probable cause breaks the chain of causation and insulates the initiating party from liability." Dr. Burzynski counters by correctly pointing out that the Supreme Court rejected the rationale underlying that broadly-stated rule in *Malley v. Briggs*."

When a conflict exists between two (2) Fifth Circuit panel decisions, the earliest decision controls. *Johnson v. Moral*, 843 F.2d 846 (5th Cir. 1988). *Burzynski Cancer Rsch. Inst.*, not the subsequent decisions, is the controlling case. *Burzynski Cancer Rsch. Inst.* holds that a judge's determination of probable cause will not break the chain of causation.

---

[1]    *Jureczki v. City of Seabrook, Texas*, 760 F.2d 666, 668 (5th Cir.1985), cert. denied, 475 U.S. 1045 (1986).

-8-

In any event, the pleadings do not indicate that any sworn facts were put before an impartial judge. Defendant County attaches as an exhibit to its answer Exhibit B, which consists both of a conclusory affidavit that Fryrear was guilty of capital murder by committing murder during the course of a robbery, and also contains unsworn facts. The unsworn facts cannot be considered because they are not supported by Oath as required by the Fourth Amendment.

There is nothing in Exhibit B to Defendant County's answer which indicates what information was given to the justice court judge. It may be that the sworn portion of Exhibit B to Defendant County's answer was never seen by a judge, but was only presented to a deputy clerk. A deputy clerk, not a judge, is the swearing officer. *See* Exhibit B to Defendant County's Answer [16]. There is nothing to show that the narrative attached at the end of Exhibit B to Defendant County's answer was presented to a justice court judge. In any event, the narrative is not sworn as required by the Fourth Amendment.

Additionally, whether Miller ever said that she and Fryrear planned a robbery, as indicated by the unsworn potion of Exhibit B to Defendant County's answer, is not established. At the criminal trial, Miller indicates that she did not know anything about a robbery, and testified that when the two (2) males returned to the vehicle, they came back empty handed. Thus, the robbery element necessary to establish probable cause for the commission of capital murder was not shown. Testimony From *Fryrear* Criminal Trial, pp. 16-18, Exhibit "A."

Miller's criminal trial testimony also emphasizes that the deputies could not have thought Miller was honest, because she testified at the trial that her relationship with Defendant Evans was because he thought she was stealing. Testimony From *Fryrear* Criminal Trial, p. 36, Exhibit "A."

Contrary to the information in Exhibit B to Defendant County's answer, Miller testified that

-9-

she was initially contacted by Defendant Evans when she was in a Wal-mart parking lot. Testimony From *Fryrear* Criminal Trial, p. 57, Exhibit "A." Law enforcement then took Miller to the Sunflower County Jail for unknown reasons. Testimony From *Fryrear* Criminal Trial, pp. 48, 57, Exhibit "A."

Defendant Evans has Miller's telephone number since he was always calling her to inquire about her stealing. Testimony From *Fryrear* Criminal Trial, pp. 58-59, Exhibit "A."

It is plausible that Defendant Evans had such a close relationship with Miller that he could have her say whatever he wanted her to say. Defendant Evans needed a suspect on whom to pin an unsolved murder, however lacking in corroboration and however contradicted by other evidence. Thus, it is plausible that there was a lack of probable cause.

### C.   IT IS PLAUSIBLE THAT THE GRAND JURY WAS NOT AN INDEPENDENT INTERMEDIARY.

As earlier noted, under *Malley*, as interpreted in *Burzynski Cancer Rsch. Inst.*, no independent intermediary doctrine bars recovery.

So far as the grand jury being an independent intermediary, it is notable that Fryrear had been in jail since October 30, 2017, and five (5) grand juries had met before she was ever indicted. *See* Motion for Habeas Corpus, or, in the Alternative, Bond Reduction in the case of *Fryrear v. Washington County, Miss.*, Washington County Circuit Court No. 2019-0061, filed on April 10, 2019, Exhibit "B." A fact-finder may infer a lack of probable cause or Defendants would not have allowed five (5) grand juries to meet before obtaining an indictment.

Although Defendant County argues otherwise, Miller, herself, never pled guilty to capital murder. Miller pled guilty to conspiracy and manslaughter. When giving her factual basis of the

plea, Miller stated only that "[o]n or about July 29, 2017, I was in the car with others who participated in the death of Mr. Freddie Formogoni [sic]." Amended Petition to Enter Plea of Guilty Plea in *State v. Miller*, Washington County Circuit Court No. 2019-0061, Exhibit "C."

It is plausible that discovery will reveal that Defendants never disclosed to either the justice court judge or the grand jury that Miller had never actually said anything more than she was present at the scene where the crime was committed. It is plausible that the deputies never disclosed to the justice court judge or the grand jury that Miller was high on drugs when deputies talked to her. It is plausible that the deputies never disclosed that Miller's version of events was contradicted by another witness (Latham). It is plausible that the deputies never disclosed that there were other suspects. It is plausible that the deputies never disclosed that Fryrear did not know the deceased. It is plausible that the deputies never disclosed that there were two (2) shots fired, but Miller's statement claimed she heard only one shot.

Even accepting the alleged statement of Miller in Exhibit B to Defendant County's answer as true, this does not show probable cause that Fryrear had committed any crime. Exhibit B to Defendant County's answer alleges only that Miller and Fryrear were present at the scene and remained in the vehicle while the two (2) males exited the vehicle. Merely being present at the scene of the crime does not make one guilty of a crime. *Walton v. State*, 165 So. 3d 516, 529 (Miss. App. 2015), held that "knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless [one] find[s] beyond [a] reasonable doubt that the defendant was a participant and not a knowing spectator." "Criminal law does not recognize guilt by association." *Hughes v. State*, 983 So. 2d 270, 276 (Miss. 2008).

If the drug-induced, contradicted, and illogical statement of a dishonest witness (Miller) be accepted as true, nothing more than presence has been shown.

The State has no legitimate interest in arresting one against whom it has no substantial evidence simply to show that it has cleared a case. On the other hand, Fryrear has a strong and overwhelming interest in her freedom. "'[T]he balancing of competing interests' as 'the key principle of the Fourth Amendment.'" *Tennessee v. Garner*, 471 U.S. 1, 8 (1985).

One "must consider the scope of the particular intrusion,. . . ." balanced against the importance of the governmental interest. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). "An arrest . . . is a serious matter for any person even when no prosecution follows. . . ." *Foley v. Connelie*, 435 U.S. 291, 298 (1978).

**D.      IT IS PLAUSIBLE THAT FRYREAR WILL ESTABLISH LIABILITY OF DEFENDANT COUNTY FOR THE ACTS OF ITS SHERIFF IN FAILING TO TRAIN ITS OFFICERS TO HAVE PROBABLE CAUSE BEFORE MAKING AN ARREST.**

Under Mississippi law, a county sheriff is the official law enforcement policymaker of the county rendering a county liable for his policy decisions. *Huddleston v. Shirley*, 787 F. Supp. 109 (N.D. Miss. 1992); *Hampton Co. Nat. Sur., LLC v. Tunica Cnty., Miss.*, 543 F.3d 221, 227 (5th Cir. 2008); *Brooks v. George Cnty., Miss.*, 84 F.3d 157, 165 (5th Cir. 1996); *Jauch v. Choctaw Cnty.*, 874 F.3d 425, 435-36 (5th Cir. 2017).

In this case, Defendant County may be held liable because the Sheriff failed to properly train his deputies as to the necessity for finding probable cause and give training on what constitutes probable cause.

"[T]he failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). "[A] municipality can be liable for failure to train its employees when the municipality's failure shows '"a deliberate indifference to the rights of its inhabitants."'" *Farmer v. Brennan*, 511 U.S. 825, 840 (1994), citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). *Brown v. Bryan Cnty., OK*, 219 F.3d 450, 463 (5th Cir. 2000), upheld a jury verdict finding that county was liable because the county sheriff had left subordinate officers "essentially, unsupervised." In this case, it is plausible that Fryrear will be able to prove that the Sheriff also let the deputies "essentially, unsupervised."

Defendant County wants a "heightened pleading" requirement, claiming that "Fryrear must identify the following: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom." Defendant County's Brief, p. 14, citing, among other cases, *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010).

Defendant County's argument is misleading since it confuses what must be proved at trial with what must be pled in order to survive a motion to dismiss. The cases cited by Defendant County are not cases decided on a motion to dismiss. For example, *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010), was decided on a motion for summary judgment.

Defendant County's argument conflicts with *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163 (1993). There, the Supreme Court rejected the Fifth Circuit's heightened pleading rule for Section 1983 cases against municipalities, holding that a federal court may not apply a standard "more stringent than the usual pleading requirements of Rule 8(a) of the

-13-

Federal Rules of Civil Procedure—in civil rights cases alleging municipal liability." *Leatherman*, 507 U.S. at 164.

Similarly, *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002), held that it was error to dismiss a discrimination case for failing to plead the "elements of a prima facie case." Likewise, it would be error to dismiss this case for failure to plead the elements of a case of municipal liability.

More recently, the United States Supreme Court spoke on the issue of heightened pleading requirements of civil rights cases in *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014). There, the Court reversed the Fifth Circuit Court of Appeals for dismissing a case because the complaint did not specifically plead that it was brought under 42 U.S.C. § 1983. The Supreme Court stated:

> We summarily reverse. Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.

*Johnson*, 574 U.S. at 11.

In this case, it is plausible that Fryrear may be able to prove that the Sheriff, as the official policymaker of Defendant Washington County, Mississippi, had a policy of deliberately failing to train his deputies on the necessity of probable cause or left deputies unsupervised. The individual Defendants' conduct in this case gives rise to such an inference, and it remains for discovery to determine whether deputies were either supervised or trained by the Sheriff.

## V. CONCLUSION

The Motion for Judgment on the Pleadings should be denied.

RESPECTFULLY SUBMITTED, this the 22nd day of November, 2022.

JESSICA FRYREAR, Plaintiff

By:     */s/ Jim Waide*
        Jim Waide, MS Bar No. 6857
        waide@waidelaw.com
        WAIDE & ASSOCIATES, P.A.
        332 North Spring Street
        Tupelo, MS  38804-3955
        Post Office Box 1357
        Tupelo, MS  38802-1357
        (662) 842-7324 / Telephone
        (662) 842-8056 / Facsimile

        ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This will certify that undersigned counsel for Plaintiff has this day filed the above and foregoing with the Clerk of the Court, utilizing the federal court electronic case data filing system (CM/ECF), which sent notification of such filing to the following:

Arnulfo Ursua Luciano, Esq.
aluciano@jlpalaw.com
lajan@jlpalaw.com
mhankins@jlpalaw.com
vsmith@jlpalaw.com

Bethany A. Tarpley, Esq.
btarpley@jlpalaw.com
dlivingston@jlpalaw.com
vsmith@jlpalaw.com

Daniel J. Griffith, Esq.
dgriffith@jlpalaw.com
aluciano@jlpalaw.com
lajan@jlpalaw.com
vsmith@jlpalaw.com

Katelyn Adele Riley, Esq.
kriley@aabalegal.com
vpeden@aabalegal.com

Willie Griffin, Esq.
wgriffinlawyer@AOL.com
cpdavenport@suddenlinkmail.com
pmcgeebaileygriffinlaw@gmail.com
sjhemphill@suddenlinkmail.com

DATED, this the 22nd day of November, 2022.

/s/ Jim Waide
Jim Waide

-16-