## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

JESSICA FRYREAR                                                      **PLAINTIFF**

VS.                                        **CAUSE NO.  4:22-cv-00112-MPM-DAS**

WASHINGTON COUNTY, MISSISSIPPI,
JARRELL EVANS and CEDRICK ADAMS,
in Their Individual Capacities for State Law
Violations Only                                                     **DEFENDANTS**

---

### PLAINTIFF'S MEMORANDUM BRIEF IN OPPOSITION TO DEFENDANT
### WASHINGTON COUNTY, MISSISSIPPI'S MOTION TO STAY [21]

---

### I.   INTRODUCTION

This case is before the Court on Defendant Washington County, Mississippi's Motion to Stay [21].

Plaintiff Jessica Fryrear has filed a suit against the individual Defendants Jarrell Evans and Cedrick Adams for malicious prosecution in violation of state law and against Defendant Washington County, Mississippi for failing to train deputies about the probable cause requirements of the United States Constitution.  This Court has jurisdiction over the claim against Defendant County under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).  This Court has supplemental jurisdiction over the state law malicious prosecution claim against the individual Defendants under 28 U.S.C. § 1367.

## II.  FACTS

Stating the facts as alleged in the Complaint [1], along with those documents of which the Court may take judicial notice, the facts are as follows:

On July 19, 2017, Mr. Frederick Formigioni was shot dead in his home in Washington County, Mississippi.  The most likely suspect was Donnie Williams whom Formigioni had fired as a farmhand.  Williams' sister, Christy Moore, was living with Formigioni and claiming to be his girlfriend, although she had ongoing sexual relationships with several other men.  Moore was present at the time of the murder and appeared to have gunshot resident on her person.  Moore told deputies that an unknown black male came to the door and shot Formigioni.  Complaint, ¶ 4 [1].

Defendants/Deputies Cedrick Adams and Jarrell Evans investigated the case.  The Sheriff of Washington County delegated policy decisions over the investigation of the murder to one or both of the deputies.  Complaint, ¶ 6 [1].

A little over three months after the murder, on October 24, 2017, one Lisa Latham, a prisoner in the Washington County Jail, identified April Miller, Donnie Williams, and Christy Moore as involved in the murder.  Complaint, ¶ 7 [1].  Based upon Latham's statement, Defendant Evans obtained an oral statement from Miller on or about October 27, 2017.  At the time Miller gave her oral statement, Miller was coming off drugs and was not in her "right state of mind."  Complaint, ¶ 7 [1].

At Fryrear's criminal trial, Miller testified that she knew Defendant Evans because Defendant Evans always accused her of stealing.  Excerpts of Trial Testimony in the case styled *State v. Fryrear, et al.*, Washington County Circuit Court No. 2019-0061 ("Trial Testimony From *Fryrear* Criminal Trial"), pp. 35-36, Exhibit "A."  Miller testified that she takes drugs every day.  Trial

Testimony From *Fryrear* Criminal Trial, pp. 32-34, Exhibit "A." Miller also swore at the criminal trial that she "probably was high" when she gave an oral statement to deputies. Trial Testimony From *Fryrear* Criminal Trial, p. 67, Exhibit "A."

Defendant County attached to its answer Exhibit B, which contains both a conclusory sworn charge and an unsworn narrative purporting to be what Miller told deputies. *See* Defendant County's Answer, Exhibit B [16]. According to this narrative, Miller told deputies that Miller, Fryrear, and two (2) males, Payne and Sanders, drove to the home of the deceased on the night of the murder. Only the two (2) males exited the vehicle and Miller later heard a single gunshot. According to Miller, the two (2) males reentered the vehicle empty handed and said nothing about any shooting or any robbery. Defendant County's Answer, Exhibit B [16]; Trial Testimony From *Fryrear* Criminal Trial, pp. 16-18, Exhibit "A."

Defendants attempted to have Latham corroborate that Fryrear, Payne, and Sanders were present, but Latham refused to so. Complaint, ¶ 8 [1].

According to Latham, after she refused to corroborate Miller's statements, she endured harassment from law enforcement. Complaint, ¶ 8 [1].

It is unlikely Miller would have been riding in a vehicle with Fryrear on the night of the murder. Miller and Fryrear were not on speaking terms at the time of the murder. Complaint, ¶ 10(e) [1].

The three (3) persons whom deputies claim Miller identified as being in the vehicle with her (Fryrear, Payne, and Sanders) all had exonerating alibis. Complaint, ¶ 10(f) [1].

At the criminal trial, all three (3) criminal defendants (Fryrear, Payne, and Sanders) were acquitted by the jury on July 23, 2021. Complaint, ¶ 13 [1].

As a basis for liability as to Defendant Washington County, the Complaint alleges that:

Consistent with the Sheriff's custom and policy, he was willfully indifferent to the right of citizens by failing to train his deputies, that they must have a reliable informant in order for the informant's statements to constitute probable cause, and . . . was willfully indifferent to the rights of arrestees by failing to make any reasonable investigation whatsoever into this case, and by failing to train Defendants Adams and Evans that they must have probable cause.

Complaint, ¶ 16 [1].

The Complaint sues the individual Defendants Evans and Adams for malicious prosecution in violation of state law and sues Defendant County for Fourth Amendment violations based upon the Sheriff's willful indifference to citizens in failing to give any training on the necessity of having reliable information before making a criminal charge. Complaint, ¶ 18, Counts I and II [1].

Defendant County has moved to dismiss, claiming that Defendant County cannot be sued because it had probable cause and that the Complaint fails to contain sufficient specific allegations to make Defendant County liable.

## III.  ARGUMENTS

### A.    THIS COURT SHOULD NOT GRANT A STAY ON THE GROUNDS OF IMMUNITY.

Local Rule 16(b)(3)(B) states:

Filing a motion to compel arbitration, or a motion asserting an immunity defense or jurisdictional defense stays the attorney conference and disclosure requirements and all discovery, pending the court's ruling on the motion, including any appeal.

Defendant County claims an immunity defense citing *Monell v. Department of Social Services,* 436 U.S. 658 (1978).  *Monell* provides no immunity defense for municipalities.  Instead, *Monell* held that a municipality is liable to the extent that an alleged unconstitutional act is caused by a local government policy or custom.  *Monell*, 436 U.S. at 690.

-4-

*Owen v. City of Indep., Mo.*, 445 U.S. 622, 644 (1980), rejected any claim that a municipality was entitled to the good faith immunity afforded individual officers. Thus, "only the liability of the municipality itself is at issue, not that of its officers. . . ." *Owen*, 445 U.S. at 638, n. 18.

*Watts v. City of Jackson*, 664 F. Supp. 2d 680, 688 (S.D. Miss. 2009), holds:

> "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, —— U.S. ——, 129 S.Ct. 808, 815 . . . (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 . . . (1982)). However, "[m]unicipalities and officers in their official capacity ... have no comparable right to be free from suit." *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 406 (5th Cir. 2007).

Thus, there is no immunity defense, and Local Rule 4(b)(3)(B) does not apply.

## B. THE COURT SHOULD NOT STAY THE CASE ON THE GROUND THAT SUSTAINING THE MOTION AGAINST DEFENDANT COUNTY WILL REQUIRE DISMISSAL OF THE INDIVIDUAL DEFENDANTS.

Defendant County makes no argument that Mississippi law requires any stay for state law claims against individual deputies for malicious torts. Instead, Defendant County argues that if its motion for judgment on the pleadings is granted on the grounds that probable cause existed, then that ruling would require dismissal of the malicious prosecution claims against the individual Defendants.

It is true that the lack of probable cause is one of the elements of a state law malicious prosecution suit. *Bankston v. Pass Rd. Tire Ctr., Inc.*, 611 So. 2d 998, 1004 (Miss. 1992). However, under Mississippi law, it is only when the facts are undisputed that the court may determine probable cause. " If the facts are in dispute, however, it is a jury question, based upon proper instructions, to

determine whether probable cause existed." *Moon v. Condere Corp.*, 690 So. 2d 1191, 1195 (Miss. 1997), citing *Owens v. Kroger Co.*, 430 So.2d 843, 846 (Miss.1983).

Furthermore, "where a reasonable person would investigate further before instigating a proceeding, the failure to do [indicates] an absence of probable cause. . . ." *Benjamin v. Hooper Elec. Supply Co.*, 568 So. 2d 1182, 1191 (Miss. 1990). *Lochridge v. Pioneer Health Servs. of Monroe Cnty., Inc.*, 86 So. 3d 942, 948 (Miss. App. 2012), held that there were genuine issues of material fact as to whether the defendant had probable cause to initiate burglary charges, because there had to be both an "honest belief" and "reasonable grounds" to constitute probable cause under Mississippi law.

In the present case, the individual Defendants took the word of a drug addict, who was on drugs at the time she gave her statement, and accepted her word as true even though another person (Lisa Latham) contradicted Miller's alleged statement. Latham said that Miller and two (2) other persons (not including Fryrear) were the persons who had gone to the home of Mr. Frederick Formigioni on the night of the murder.

The determination of probable cause for purposes of a malicious prosecution suit are, therefore, unlike the determination of probable cause under the Fourth Amendment. A ruling in Defendant County's favor – even on the probable cause issue – does not preclude the individual Defendants' liability for the state law tort of malicious prosecution.

Of most importance, under MISS. CONST. § 23, Defendants must establish reliability of an informant to show probable cause. *Roebuck v. State*, 915 So. 2d 1132, 1139 (Miss. App. 2005), holds that to establish probable cause, for the purposes of issuing a warrant, there must be evidence of the "reliability of the confidential informant." *Roebuck* held that "[b]ecause nothing in the record

before this Court suggests that [the officers] presented any basis of reliability on the informer's statement or any suggestion of the veracity of it, the motion to suppress should have been granted." *Roebuck*, 915 So. 2d at 1140.

Defendants failed to present any evidence of the reliability of Miller. Instead, all of the evidence is that Miller is dishonest (since she was a suspect in thievery), and that she was on drugs both at the time the deputies state she at the scene of the murder and at the time she gave her statement. Rather than being corroborated, the witness in jail, Lisa Latham, disavowed Miller's claim, despite law enforcement's pressure, and stated that the people involved in the murder were Miller and two (2) other persons, rather than Fryrear. Under *Roebuck*, the failure to show reliability of an informant precludes probable cause. Certainly probable cause is precluded when the evidence is that the informant is not reliable.

Nor is there probable cause under the United States Constitution. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983), adopted a "totality-of-the-circumstances" test for determining probable cause, overriding the contrary holding in *Aguilar v. State of Tex.*, 378 U.S. 108 (1964).

Interpreting the United States Constitution, *Gates* specified that Supreme Court precedents have "consistently recognized the value of corroboration of details of an informant's tip by independent police work," *Gates*, 462 U.S. at 241, and reaffirmed that officers "may rely upon information received through an informant, . . . so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." *Gates*, 462 U.S. at 242, quoting *Jones v. United States*, 362 U.S. 257, 269 (1960).

There is no corroboration for Miller's claim. To the contrary, Miller's statement is contradicted Latham. Miller gave the statement when she high on drugs. The statement is

-7-

improbable because Fryrear and Miler were not on speaking terms at the time Miller incriminated Fryrear. When Miller pled guilty herself, it was not to capital murder, but to manslaughter and conspiracy. Miller did not identify Fryrear as being involved in the murder when she gave her statement concerning the crime. *See* Amended Petition to Enter Plea of Guilty Plea in *State v. Miller*, Washington County Circuit Court No. 2019-0061, Exhibit "B."

## C. A STAY IS PREJUDICIAL BECAUSE IT CAUSES AN UNKNOWN AMOUNT OF DELAY.

Regarding prejudice, Defendant County claims that at the time the District Court will take to dispose with the motion for judgment on the pleadings "will not be lengthy. . . ." Washington County, Mississippi's Memorandum of Authorities in Support of Its Motion to Stay ("Defendant County's Brief"), p. 3 [22]. How does defense counsel know this? The time it takes for the District Court to rule on the motion will depend on the Court's schedule and commitments, and not on any matter about which defense counsel would have knowledge.

This case involves witnesses who have been involved the criminal legal system and are apt to be difficult to find and to depose. It is likely that the taking of depositions will be lengthy, and counsel will likely need more than the six (6) months' standard time for discovery.

In order to delay this case as little as possible, consistent with Rule 1's mandate for a speedy determination of cases, discovery should not be delayed.

## IV. CONCLUSION

The Motion to Stay should be denied.

-8-

RESPECTFULLY SUBMITTED, this the 22nd day of November, 2022.

JESSICA FRYREAR, Plaintiff

By:     */s/ Jim Waide*
        Jim Waide, MS Bar No. 6857
        waide@waidelaw.com
        WAIDE & ASSOCIATES, P.A.
        332 North Spring Street
        Tupelo, MS  38804-3955
        Post Office Box 1357
        Tupelo, MS  38802-1357
        (662) 842-7324 / Telephone
        (662) 842-8056 / Facsimile

        ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This will certify that undersigned counsel for Plaintiff has this day filed the above and foregoing with the Clerk of the Court, utilizing the federal court electronic case data filing system (CM/ECF), which sent notification of such filing to the following:

Arnulfo Ursua Luciano, Esq.
aluciano@jlpalaw.com
lajan@jlpalaw.com
mhankins@jlpalaw.com
vsmith@jlpalaw.com

Bethany A. Tarpley, Esq.
btarpley@jlpalaw.com
dlivingston@jlpalaw.com
vsmith@jlpalaw.com

Daniel J. Griffith, Esq.
dgriffith@jlpalaw.com
aluciano@jlpalaw.com
lajan@jlpalaw.com
vsmith@jlpalaw.com

Katelyn Adele Riley, Esq.
kriley@aabalegal.com
vpeden@aabalegal.com

Willie Griffin, Esq.
wgriffinlawyer@AOL.com
cpdavenport@suddenlinkmail.com
pmcgeebaileygriffinlaw@gmail.com
sjhemphill@suddenlinkmail.com

DATED, this the 22nd day of November, 2022.


/s/ Jim Waide
Jim Waide


-10-