IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

JESSICA FRYREAR                                                                                               PLAINTIFF

v.                                                               No. 4:22-CV-00112-MPM-DAS

WASHINGTON COUNTY, MISSISSIPPI, et al.                           DEFENDANTS

**ORDER**

      This cause comes before the Court on Defendant Washington County's Motion for Judgment on the Pleadings [19] pursuant to Federal Rule 12(c). The plaintiff, Ms. Fryrear, has responded in opposition to the motion [26], and the Court, having considered the memoranda and submissions of the parties, is now prepared to rule.

**FACTUAL BACKGROUND**

      On July 19, 2017, Mr. Frederick Formigioni was murdered in his home in Washington County, Mississippi. The case was assigned to Defendants Jarrell Evans and Cedrick Adams, both of whom served as Deputy Sheriffs. Two individuals emerged as the most likely suspects: Christy Moore, the victim's girlfriend, and her brother Donnie Williams. Formigioni had recently fired Williams from his position as farmhand, supplying him with motive for the killing. As to Moore, she was present at the time of the murder, gave conflicting statements about how it occurred, and appeared to have gunshot residue on her person.

      About three months after the crime, Lisa Latham, a prisoner in the Washington County Jail, identified April Miller, Donnie Williams, and Christy Moore as the perpetrators. Based upon Latham's declaration, Defendant Evans met with April Miller to obtain her statement. In her statement, Miller confessed that she was "in the car with others who participated in [Formigioni's] death" but alleged an entirely new set of co-conspirators. Contradicting Latham's version of

events, Miller claimed that she was instead accompanied by the plaintiff Jessica Fryrear, Eugene Sanders, and Roderick Payne. All three individuals accused by Miller had exonerating alibis, and the defendants' investigation did not reveal any evidence or motive that would substantiate Miller's claim. In fact, the plaintiff did not even know Mr. Formigioni. Nevertheless, Evans and Adams returned to Latham and insisted that she corroborate Miller's version of events, which she refused. According to Latham, her refusal resulted in "a pattern of needless stopping, threatening, and harassing" by the deputies which ultimately led to her exodus from Mississippi altogether. Still, she remained steadfast and ultimately provided testimony consistent with her original statement at trial.

Because there was no evidence connecting the plaintiff to the murder nor any ostensible motive as to why she would have participated in such a crime, the case against Ms. Fryrear was based solely on Miller's uncorroborated statement – a statement which the plaintiff contends Defendants knew to be unreliable. Undeterred by the lack of evidence, Defendant Adams executed a criminal affidavit against Ms. Fryrear on October 30, 2017, and arrested her the same day. Ms. Fryrear's case was presented to five grand juries before an indictment was returned, and she remained in custody until, nearly three years after her arrest, her bond was reduced permitting her release. On July 23, 2021, a jury found Ms. Fryrear and Eugene Sanders and Roderick Payne not guilty.

Claiming there was no probable cause for her arrest, the plaintiff brought suit against the deputies for malicious prosecution and Washington County for Fourth Amendment violations through the policy decisions of its Sheriff. The complaint alleges that Defendants Adams and Evans knew Miller's statements were unreliable and could not establish probable cause because: (1) Miller was "coming off drugs" when giving her statement and "not in her right state of mind";

2

(2) Defendants had questioned Miller on many occasions for stealing and, therefore, could not believe her to be trustworthy; (3) physical evidence directly contradicted Miller's version of events; and (4) Defendant Evans had a sexual relationship with Miller and could not have viewed her as an impartial witness. The plaintiff claims that Washington County is liable for the constitutional violation under 42 U.S.C. § 1983 because the Sheriff, as official policymaker for the county, was deliberately indifferent to the rights of citizens by failing to train his deputies that an informant must be reliable for their statement to establish probable cause.

Defendant Washington County argues that the plaintiff's complaint should be dismissed because there was probable cause to arrest Ms. Fryrear based solely on the word of her alleged co-conspirator and, therefore, no constitutional violation occurred. Alternatively, Washington County asserts that even if there was a Fourth Amendment violation, Ms. Fryrear's complaint is still deficient because it does not plead facts that plausibly establish a municipal policy or custom responsible for that violation.

## STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard for evaluating Rule 12(c) motions for judgment on the pleadings is identical to that of Rule 12(b)(6) motions to dismiss for failure to state a claim. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019).

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe the complaint in a light most favorable to the plaintiff and accept all well-pleaded facts as true. *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005). Motions to dismiss under Rule 12(b)(6) are "viewed with disfavor" and "rarely granted." *Brown v. Phoenix Life Ins. Co.*, 843 F.

App'x 533, 538-39 (5th Cir. 2021). Dismissal is not warranted just because the court believes the plaintiff is unlikely to prevail on the merits, even if it appears an almost certainty that the facts alleged cannot be proven. *Larroquette v. Cardinal Health 200, Inc.*, 466 F.3d 373, 377-78 (5th Cir. 2006). The complaint cannot be dismissed so long as it states a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ANALYSIS

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must (1) allege the deprivation of a right secured by the Constitution or federal law; and (2) demonstrate that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Municipalities may be sued under § 1983 but are only responsible for their own acts and cannot be held liable on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, to state a plausible claim against Washington County under *Monell*, Ms. Fryrear must allege that (1) a constitutional violation occurred; and (2) an official policy or custom was the "moving force" behind the violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Defendant Washington County argues that the plaintiff has not satisfied either element.

    1.    *Constitutional Violation*

The Fourth Amendment "prohibits government officials from detaining a person in the absence of probable cause." *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017). Though admissions of co-conspirators "carry their own indicia of credibility–sufficient at least to support a finding of probable cause," this fact alone is not dispositive. *United States v. Harris*, 403 U.S. 573, 583 (1971). The totality of the circumstances test is applied when determining whether a warrant was supported by probable cause and, importantly, the reviewing court considers the informant's

4

reliability and veracity as part of that determination. *United States v. Jackson*, 818 F.2d 345, 348 (5th Cir. 1987).

Here, Washington County argues that "Plaintiff cannot establish a Fourth Amendment violation because there was probable cause to arrest her solely on the word of her alleged co-conspirator." Based on the totality of the circumstances, the Court disagrees. The plaintiff's complaint asserts very serious allegations regarding the reliability of April Miller and her statement. First, Ms. Fryrear alleges that the defendants knew Miller was unreliable because Evans, and perhaps Adams, had questioned Miller on multiple occasions for stealing and, therefore, knew she was dishonest. Second, Miller was a known drug addict and testified that she was "coming off drugs" when giving her statement and "not in her right state of mind." Third, Miller's version of events was directly contradicted by physical evidence, and investigators were unable to find any evidence to substantiate her claim. Finally, and most egregiously, Defendant Evans had a sexual relationship with Miller, making it impossible for her to be considered an impartial witness. Though Washington County considers this "not material," the Court believes this fact alone is enough to question the sufficiency of the probable cause affidavit. Therefore, it is plausible that Ms. Fryrear will be able to establish facts indicating a lack of probable cause.

Washington County claims that even if the affidavits were lacking, they are insulated from liability by the independent intermediary doctrine. The Fifth Circuit has held that when facts supporting an arrest are put forth to an intermediary, such as a grand jury or justice court judge, the intermediary's decision to issue a warrant breaks the causal chain and insulates the police officer from liability. *Wheeler v. Cosden Oil & Chem. Co.*, 744 F.2d 1131, 1132 (5th Cir. 1984). This shield, however, is not absolute. The Supreme Court has held that if "no officer of reasonable competence would have requested [such a] warrant" it constitutes an "unacceptable error" and the

5

"officer then cannot excuse his own default by pointing to the greater incompetence of the magistrate." *Malley v. Briggs*, 475 U.S. 335, 346 n.9 (1986). Under *Franks v. Delaware*, 438 U.S. 154 (1978), officers "who make knowing and intentional omissions that result in a warrant being issued without probable cause may still be held liable." *Mayfield v. Currie*, 976 F.3d 482, 487 (5th Cir. 2020) (citing *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017)). Therefore, it is plausible that Ms. Fryrear may prove that her Fourth Amendment rights were violated by Washington County, satisfying the first element of *Monell*.

      2.     *Official Policy or Custom*

Municipal liability under § 1983 can be established if the deprivation of a constitutional right was due to an official custom or policy. *Piotrowski*, 237 F.3d at 579. The relevant policy or custom need not be pled in exhaustive detail, but there must be enough facts "to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The complaint must go beyond boilerplate recitations of the elements and must contain factual allegations that provide fair notice of the claim's nature and the grounds upon which it rests. *Id.* at 555.

Official policy is "ordinarily contained in duly promulgated policy statements, ordinances or regulations" but may also be established by custom. *Piotrowski*, 237 F.3d at 579. When a facially valid policy is enacted but the municipality "fails to train its employees to implement it in a constitutional manner, that failure constitutes 'official policy' that can support municipal liability if it 'amounts to deliberate indifference.'" *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference is a stringent standard and can be established by either a pattern of similar violations or, "in rare circumstances" by showing a single incident in which the alleged violation was a

"highly predictable" consequence of the municipal actor's decision. *Liggins v. Duncanville*, 52 F.4th 953, 955 (5th Cir. 2022). Though the single incident exception is a narrow one, it can attach for a single decision to leave an officer "essentially, unsupervised." *Brown v. Bryan County*, 219 F.3d 450, 463 (5th Cir. 2000).

Proceeding under a single incident theory, Ms. Fryrear alleges that the Sheriff, as policymaker for Washington County, was deliberately indifferent by failing to train his deputies on the necessity of probable cause and left his employees essentially unsupervised. The plaintiff goes beyond a bare bones recitation of the elements and pleads substantial facts that nudge her inadequate training and supervision claim above the speculative level. Indeed, the sexual relationship between Miller and Evans would seem unlikely to occur without lack of oversight. Taking Ms. Fryrear's allegations as true and viewing them in the light most favorable to her, as required at this stage of the proceedings, the Court finds that the plaintiff has, at a minimum, pled sufficient facts to raise a reasonable expectation that discovery will reveal evidence to support her *Monell* claims. She has provided more than generic, boilerplate recitations of the elements and, therefore, provided adequate notice to Washington County of the basis of her claims. While Ms. Fryrear's claims may not ultimately withstand a Rule 56 challenge, her factual allegations are sufficient to survive the instant motion. Accordingly, Defendant Washington County's motion is denied.

**IT IS HEREBY ORDERED** that Defendant Washington County's Motion for Judgment on the Pleadings [19] is **DENIED**.

**SO ORDERED** this 26th day of September, 2023.

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**